UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DAMIEN C. LAMB, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 4:04-cv-116 |
| ) | (1:03-cr-7) |
| v. ) | *Edgar* |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM**

Petitioner Damien C. Lamb has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. [Court Doc. No. 1]. The Government opposes Lamb's motion. [Court Doc. No. 8]. As stated *infra*, this court has concluded that a hearing is not necessary and that Lamb's Section 2255 motion is without merit and will be **DENIED**.

**I.     Procedural History and Background Facts**

On May 14, 2003, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a second superseding indictment against Lamb charging him with one count of conspiring to distribute 5 kilograms or more of cocaine hydrochloride, one count of possession of cocaine hydrochloride with intent to distribute, one count of possession of marijuana with intent to distribute, and one count of possession of a firearm in furtherance of a drug trafficking crime. The indictment alleged that seven other defendants conspired with Lamb on the conspiracy to distribute charge. [Court Doc. No. 74].

On September 15, 2003 Lamb pled guilty pursuant to a plea agreement signed with the government. [Court Doc. No. 128]. The plea agreement provided that Lamb agreed to plead

guilty to Count One, the conspiracy to distribute more than 5 kilograms of cocaine hydrochloride, and Count Five, possession of a firearm in furtherance of the drug trafficking crime in Count One. *Id.* The government agreed to move for dismissal of the third and fourth count of the indictment. The plea agreement provided that the parties agreed to the following description of the factual circumstances of the crimes Lamb committed:

> From approximately February 2000 through June 2002, defendant conspired with others in Bedford County, Tennessee, to distribute more than five kilograms of cocaine hydrochloride (powder). In early 2000, defendant began to purchase cocaine from Matthew Kelly. Eventually, Kelly introduced defendant to a supplier located in Atlanta, Georgia. Defendant began acquiring cocaine from the Atlanta source and would bring it back to Bedford County to distribute to Kelly and others, including James Seibers, who would then sell the cocaine and then pay defendant. The amount of cocaine distributed by the defendant to others in the conspiracy exceeded five kilograms. On February 7, 2001, agents with the local Drug Task Force executed a search warrant at Lamb's residence in Bedford County, in the EDTN. Lamb was present at the time. The agents found 161.3 grams of cocaine powder (lab tested by the TBI) and 582.0 grams of marijuana (lab tested by the TBI). A Ruger 9 mm handgun and a magazine containing 10 rounds were found in the bedroom. Two boxes of 9 mm ammunition were found in the hallway closet. Some of the cocaine and some of the marijuana were found in the bedroom. Other cocaine was found in the back of a grandfather clock in the living room. A large amount of currency, about $28,910.00, was found in various places in the home.

[Court Doc. No. 128, ¶ 11].

The plea agreement also proved that:

> [t]he defendant expressly waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case. Thus, the defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea being offered in the instant case. The defendant further acknowledges that a breach of this clause of the plea agreement (like the defendant's breach of any other clause of the plea agreement) would leave the United States free to withdraw from the plea agreement.

[Court Doc. No. 128, ¶ 8].

During the rearraignment proceedings on September 15, 2003, this court asked Lamb whether he understood the charges against him in Count Five of the second superseding indictment. The colloquy between the court and Lamb with respect to this charge was as follows:

> The Court: . . .in connection with this [Count Five] the government would have to prove certain things before you could be convicted. And they'd have to prove these by beyond a reasonable doubt.
> First, is that you committed the crime that we've already discussed in connection with Count 1 . . . Second, that you possessed a firearm. You had one under your control.
> And, finally, that the reason you had it was in connection with your drug offense, either to protect drugs, cash, yourself, or some other way to further the drug trafficking crime. Do you think you understand what you're charged with there in Count 5?
> Defendant Lamb: Yes, sir.
> The Court: And knowing what that is, do you still want to plead guilty to Count 5?
> Defendant Lamb: Yes, I do.

Rearraignment Proceedings, Sept. 15, 2003, Vol. I, p. 15.

The court also reviewed Lamb's plea agreement with him and another defendant pleading guilty at the same time. The court stated the following:

> The Court: The agreements each of them, also, provide that you are giving up, each of you, one of the means which you would otherwise have to challenge the validity of your convictions in this case. We call this a habeas corpus petition sometimes. It's referred to here in Paragraph 8 of your agreements, in both of the agreements it's Paragraph 8. You are giving up your right to challenge your conviction in this manner except for certain reasons that are specified here.
> Do you understand that, Mr. Lamb?
> Defendant Lamb: Yes, sir.

Rearraignment Proceedings, Sealed Proceedings by Order of the Court, p. 7. The court did not state that Lamb had waived his right to file a direct appeal relating to his guilty plea. In fact, at

-3-

his sentencing hearing on December 8, 2003, this court noted to Lamb, "[y]ou do have a right to appeal your sentence. If you want to do that, discuss that with Mr. Cavett and a notice of appeal, if you wish to appeal, will have to be filed within 10 days." Judgment Proceedings, December 8, 2003, p. 5.

In his Section 2255 motion Lamb claims that his attorney informed him that he had waived his right to file a direct appeal in his plea agreement, and thus he failed to ask his attorney to file an appeal. Lamb did not file an appeal, and a direct appeal is now time-barred. Lamb has attached his own affidavit to his reply brief in support of his contentions. Lamb's affidavit states in his own words:

> 4). Affiant further sayeth that Attorney Cavett, Jr., discussed the terms of the plea-agreement with the affiant before affiant plead [sic] guilty to the § 924(c)(1) charge and shortly after affiant was sentenced;
> 5). Affiant further sayeth that Attorney Cavett, Jr., never specifically stated affiant had waived his direct appellate rights. Attorney Cavett, Jr., informed affiant he had wavied [sic] his rights to seek readdress on affiant's sentence or plea because it violated affiant's plea agreement;
> 6). Affiant further sayeth that Attorney Cavett, Jr., failure [sic] to specifically explain which readdress rights affaint [sic] had waived, affiant mistakenly believed he had waived his direct appellate rights;
> 7). Affiant further sayeth that Attorney Cavett, Jr., stated that affiant did not have any issues to appeal and any appeal would possibly violate affiant's plea-agreement . . . .
> 9). Affiant further sayeth that the core of Attorney Cavett, Jr.'s ambiguous discussion about affiant's waiver provisions were the result of affiant indicating to Attorney Cavett, Jr., affiant's desires to appeal the 18 U.S.C. § 924(c)(1) charge. Affiant specifically expressed his interest in appealing his case, however, because of the ambiguous explanation Attorney Cavett, Jr., provided, affiant assumed he had no right to appeal.

[Court Doc. No. 11, Affidavit ("Lamb Affidavit")].

Lamb's former attorney, John Cavett, Jr., has a different recollection, and the government has provided an affidavit signed by Mr. Cavett in response to Lamb's Section 2255 motion. In

his affidavit Mr. Cavett states in pertinent part:

> 5.  Other than a possible issue relating to the search, there were no significant defenses available to Lamb. Among other things, when he was originally arrested he signed a *Miranda* waiver and made a complete and thorough statement to the arresting officers. Accordingly, my advice to Lamb was to enter into a plea agreement with the government and cooperate with the hope of receiving a downward departure pursuant to U.S.S.G. Section 5K1.1.
> 6.  The plea agreement I negotiated for Lamb did not include a waiver of his right to appeal. Although such waivers have been upheld by the United States Court of Appeals for the Sixth Circuit, I have always respectfully disagreed with those holdings and have routinely asked the Assistant United States Attorneys I have dealt with to delete that particular waiver language in plea agreements for my clients. While I have advised my clients that such waivers have been held to be constitutional I have further advised my clients that I thought that they were unfair. I am fairly certain that I have never had a client enter into a plea agreement in any of my cases that contains such a waiver. I believe this is significant because I am aware that Lamb contends that I advised him that his right to appeal had been waived. This is not only untrue but would run counter to an issue I feel passionate about. . . .
> 11. Following his sentencing, I recollect that I met with Lamb briefly in the holding cell and advised him that because there were no reasonable defenses to the case and there were no sentencing errors to complain of, he had no reasonable basis for an appeal. I told him that I would not file an appeal and he acknowledged and agreed. It is my standard practice to have this discussion with my clients usually immediately following sentencing and it is my recollection that I did so with Lamb.
> 12. It continues to be my opinion that Mr. Lamb had no appealable issues and if required by him to file an appeal I would probably have filed an *Anders* brief on his behalf.

[Court Doc. No. 8-2, Affidavit of John C. Cavett, Jr. ("Cavett Affidavit"), ¶¶ 5,6,11, 12].

Lamb timely filed his Section 2255 motion. In his motion Lamb raises three arguments. He claims: (1) that his counsel was ineffective due to his counsel's alleged advice that he had waived his right to file a direct appeal in his plea agreement with the United States; (2) that his counsel was ineffective due to his failure to challenge the sufficiency of the evidence regarding Count Five of the second superseding indictment; and (3) his sentence on Count Five violates the Eighth Amendment of the U.S. Constitution because Lamb is actually innocent of that offense.

## II.     Standard of Review

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Lamb did not file a direct appeal, and he is now seeking collateral review for what he claims to have been ineffective assistance of counsel and actual innocence of Count Five. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict. It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109

(6th Cir. 1994)).

Further,

> [w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998) (other citations omitted)).

**IV. Analysis**

Petitioner claims that his counsel provided ineffective assistance by allegedly advising him that he had waived his right to a direct appeal in his plea agreement and by failing to challenge the sufficiency of the evidence for the 18 U.S.C. § 924(c) firearm offense.

Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the

-7-

defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Within the context of a guilty plea, the Sixth Circuit has recently noted:

In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." A defendant can meet this burden by showing, for example, that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at trial," or by showing that he or she was not competent to plead guilty. A defendant is competent if he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."

*Stewart v. Morgan*, 2007 WL 1451974 *4 (6th Cir. 2007)(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Dusky v. United States*, 362 U.S. 402, 402 (1960) and citing *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996)).

In this action Lamb claims his counsel advised him that he had waived his direct appeal rights when his plea agreement did not waive these rights. He further asserts that he would have asked his attorney to file a direct appeal if he had known he could do so. In *Roe v. Flores-Ortega*, the U.S. Supreme Court reiterated that:

We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by

following his instructions, his counsel performed deficiently.

528 U.S. 470, 477, 120 S.Ct. 1029, 1035 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. (1969) (other citations omitted)). In *Flores-Ortega* the Supreme Court held that:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

528 U.S. at 480, 120 S.Ct. at 1036. To demonstrate a showing of prejudice from a failure to file an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. at 1038.

Where there are conflicting affidavits regarding whether a petitioner asked his attorney to appeal, district courts may be unable to resolve the factual question without an evidentiary hearing. *See e.g., Lozano v. United States of America*, 2006 WL 532284 No. 203 CV257FTM29SPC * 3 (M.D. Fla. Mar. 3, 2006). In other words, "[i]f the motion, files, and records of the case are inconclusive regarding whether the petitioner instructed his counsel to file an appeal, the Court should hold an evidentiary hearing to determine whether the request [to appeal] was made." *Hernandez-Ramos v. United States*, 2006 WL 3307759 No. 06-0578-CV-W-NKL-P (W.D. Mo. Nov. 13, 2006) (citing *Estes v. United States*, 883 F.2d 645, 649 (8th Cir. 1989)). However, courts have also found that a petitioner must clearly demonstrate that he instructed his counsel to appeal. *See Holloway v. United States*, 960 F.2d 1348, 1356-57 (8th Cir. 1992); *Plummer v. United States*, 2006 WL 2860874 No. 06-2808 (D. Minn. Oct. 4, 2006).

In addition, a petitioner's self-serving statements in an affidavit that are contradicted by a

credible version of events in an affidavit from his trial counsel may be incredible as a matter of law. *See e.g. Gibson v. United States*, 2007 WL 210417 No. CV-06-5740 *4 (E.D.N.Y. Jan. 25, 2007) (citing *Castrillo v. Breslin*, 2005 WL 2792399 *13-14 (S.D.N.Y. 2005); *Thai v. United States*, 2007 WL 13416 *6 (E.D.N.Y. 2007); *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003)). Under some circumstances a petitioner may not be entitled to an evidentiary hearing "based solely upon his uncorroborated assertion that he asked counsel to file an appeal." *Guiterrez-Fernandez*, 2000 WL 1559945, No. 99 Civ. 4484 *3 (S.D.N.Y. Oct. 18, 2000); *see also, United States v. Ibe*, 1999 WL 970392 No. 97CR1213 *3 (S.D.N.Y. Oct. 25, 1999).

In this case a close reading of Lamb's affidavit reveals that he does not assert that his counsel misled him, but that he misunderstood the difference between a direct appeal and a collateral attack on his conviction and sentence. Lamb's affidavit does not directly contradict his former counsel's affidavit, and it is vague and ambiguous at best. Lamb agrees that his attorney discussed the terms of the plea agreement with him before he pled guilty and after he was sentenced. Lamb Affidavit, ¶ 4. Lamb also admits that his attorney "never specifically stated [Lamb] had waived his direct appellate rights." *Id.* at ¶ 5. This paragraph confirms his former counsel's version of the facts–that the attorney did not inform Lamb he had waived any right to direct appeal. Lamb's affidavit continues to explain that he misunderstood what his attorney told him and "mistakenly believed he had waived his direct appellate rights." *Id.* at ¶ 6. At most, Lamb accuses his counsel of providing an "ambiguous explanation" of his appeal rights so that Lamb assumed he had no appeal rights. *Id.* at ¶ 9.

Thus, Lamb does not contradict his attorney's affidavit. Lamb's former attorney explains how he feels strongly about not waiving a defendant's right to direct appeal. Cavett Affidavit, ¶

6. His attorney informed him that he did not think there were any reasonable bases for an appeal. *Id.* at ¶ 11. Because Lamb does not contradict his attorney's credible explanation regarding the discussion surrounding an appeal, this court determines that an evidentiary hearing is unnecessary. Lamb's counsel's explanation is entirely believable, and Lamb merely indicates that he did not understand what his attorney was telling him. This is not a basis for an ineffective assistance of counsel claim. If it were, no attorney could survive such a claim, for any defendant would merely claim that he misunderstood his attorney even when the attorney clearly explained the law and the defendant's rights.

Further, this court clearly explained to Lamb that the plea agreement provided that he was "giving up" "one of the means which [he] would otherwise have to challenge the validity of [his] conviction[] in this case." Rearraignment Proceedings, Sealed Proceedings, p. 7. The court further explained that the appeal was called a "habeas corpus petition." *Id.* The court never informed Lamb that he had given up all of his appeal rights or his direct appeal rights. Lamb responded that he understood the court's explanation of his waiver of his Section 2255 rights. *Id.* Further, during the sentencing hearing, this court informed Lamb that he had the right to file a direct appeal and that if he wished to do so, he should tell his attorney within ten days. [Judgment Proceedings, December 8, 2003, p. 5].

Thus, even if Lamb had shown that his attorney misled him regarding his waiver of appeal rights, a court's "proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); *see also, Hastings v. Yukins*, 194 F.Supp.2d 659, 669 (E.D. Mich. 2002). Other district courts in this Circuit have noted that "habeas relief should not be granted by crediting a

petitioner's subjective version of her understanding of the plea bargain." *Hastings*, 194 F.Supp.2d at 670.

In this action Lamb has not demonstrated that his attorney provided him with incorrect information regarding his appeal rights, and he has not alleged that he asked his attorney to file a direct appeal and his attorney failed to do so. Lamb's alleged misunderstanding about his right to file a direct appeal, despite this court's and his counsel's correct explanation of his rights, does not suffice to state a claim for ineffective assistance of counsel.

Lamb also argues ineffective assistance of counsel because his counsel failed to object to the sufficiency of the evidence on the firearm charge pursuant to 18 U.S.C. § 924(c). Lamb argues that 18 U.S.C. § 924(c) requires more than mere possession of a firearm. The Sixth Circuit has explained the requirements for conviction pursuant to 18 U.S.C. § 924(c) for use of a firearm in furtherance of a drug trafficking crime:

> [W]e emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found. The list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

*United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001) (citations omitted). *See also, United States v. Swafford*, 385 F.3d 1026 (6th Cir. 2004). Further, a "jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*,

367 F.3d 557, 561 (6th Cir. 2004) (quotation omitted).

In this action Lamb stipulated that the police found a "Ruger 9 mm handgun and a magazine containing 10 rounds" in the bathroom. Plea Agreement, ¶ 11. Further, they found two boxes of 9 mm ammunition in the hallway closet. Police discovered cocaine and marijuana in the bedroom, and almost $30,000 in various locations in the home. *Id.* The Sixth Circuit has noted that Ruger handguns are not typically sporting guns, but are likely to be used in connection with drug trafficking. *See e.g., United States v. Edelen*, 48 F.App'x 136, 140 (6th Cir. 2002) (noting Ruger 22 caliber handgun not typically used as a sporting gun); *see also, United States v. Draine*, 172 F.3d 63 1999 WL 46694 *2 (10th Cir. 1999) (noting that Ruger .9mm handgun, pager cover, small bag of marijuana, and cash hidden in a sock were "generally recognized as 'tools' of the drug trafficking trade").

The presence of a handgun in a bathroom, along with a loaded magazine, as well as additional ammunition located in close proximity in a closet made it reasonable for Lamb's attorney to believe that the requirements of 18 U.S.C. § 924(c) were satisfied. The gun was located in an unusual location for a gun associated with sporting or collecting, and the gun was not one typically used for sport. Further, the additional close proximity of both illegal drugs and large sums of cash made Lamb's attorney's failure to challenge the evidence to support the Section 924(c) firearm offense reasonable. Thus, Lamb has not demonstrated ineffective assistance of counsel relating to his attorney's failure to challenge the sufficiency of the evidence for the Section 924(c) conviction based on the stipulated facts.

Lamb's final contention, that his imprisonment for the 18 U.S.C. § 924(c) offense violates the Eighth Amendment ban on cruel and unusual punishment because he is actually

innocent of the offense is without merit. Based on the facts stipulated by Lamb himself, he has not demonstrated actual innocence of the offense of possession of a firearm in furtherance of a drug trafficking crime.

**III.    Conclusion**

In accordance with the analysis *supra*, Lamb's 28 U.S.C. § 2255 motion will be **DENIED**.

A separate order will enter.

$\qquad$ */s/ R. Allan Edgar* $\qquad$
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE